UNITED STATES of America, Appellee,

v.

Jollie Rocky Allen SMITH, III, Appellant.

No. 92–2421.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1993.

Decided June 29, 1993.

Lea Ellen Fowler, Little Rock, AR, for appellant.

William C. Adair, Little Rock, AR (Charles A. Banks, William C. Adair and Laura Partlow, on brief) for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

PER CURIAM, in which JOHN R. GIBSON and WOLLMAN, Circuit Judges, concur.

Jollie Rocky Allen Smith, III, appeals the fifty-seven-month prison sentence imposed on him by the district court[1] after he was convicted of being a felon in possession of a firearm, under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). We affirm.

The evidence at trial revealed that, in a Missouri state court in 1984, Smith was convicted of stealing and was sentenced to five years imprisonment. In February 1990, Jim Hall gave Smith a Taurus nine millimeter automatic pistol. Other individuals later saw the pistol in Smith's house. Several witness-

---

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

es testified that, on June 30, 1991, Smith went to the place where Dennis Simkins was camping, and shot and wounded Simkins with the Taurus pistol.

Using the version of the Guidelines in effect at the time of Smith's offense, the Presentence Report (PSR) applied a cross-referencing provision and set Smith's base offense level at 15, based on the applicable Guideline for aggravated assault. *See* U.S.S.G. §§ 2K2.1(c)(2), 2X1.1, 2A2.2 (1990). The PSR increased Smith's offense level by five for discharging the firearm, and by four more for causing Simkins serious bodily injury. *See* U.S.S.G. § 2A2.2(b)(2)(A), (b)(3)(B). Smith objected to the PSR's use of the cross-referencing provision, and the district court overruled the objection.

On appeal, Smith challenges the district court's cross-reference to section 2X1.1. He argues that the court violated his constitutional rights to due process and to a jury trial by applying the sentencing provisions for aggravated assault—a crime with which he had not been charged. Smith notes that section 2X1.1 was amended on November 1, 1991, before he was sentenced. He argues that the section should not have been applied to him because the amended version contains language which requires a conviction for aggravated assault.[2]

■■■■■ This court previously upheld a district court's cross-reference from section 2K2.1 to the aggravated assault Guideline. *United States v. Shinners,* 892 F.2d 742, 743 (8th Cir.1989) (per curiam). Smith (unlike Shinners) raises a constitutional question, but we conclude the district court did not violate Smith's constitutional rights. A district court's consideration of uncharged conduct in sentencing does not violate a defendant's constitutional rights if the government proves such conduct by a preponderance of the evidence. *United States v. Galloway,* 976 F.2d 414, 422–25 (8th Cir.1992) (en banc) (because defendant's uncharged crimes are treated as sentencing factors, rights to indictment, jury trial, and proof beyond reasonable doubt do

not come into play), *cert. denied,* — U.S. ——, 113 S.Ct. 1420, 122 L.Ed.2d 790 (1993). Here, the government proved the aggravated assault by a preponderance of the evidence at trial.

Although the specific issue in *Galloway* was whether the relevant-conduct Guideline (U.S.S.G. § 1B1.3) was constitutional, the same analysis applies to the consideration of the constitutionality of the cross-referencing provision. The relevant-conduct Guideline and the cross-referencing provision similarly allow the district court to consider uncharged conduct in determining the defendant's offense level. *See United States v. Humphries,* 961 F.2d 1421, 1422–23 (9th Cir.1992) (per curiam) (upholding as constitutional district court's cross-reference to sections 2X1.1 and 2A2.2, even though defendant had been charged only with being a felon in possession of firearm).

■■■ We reject Smith's argument that, under the 1991 amendment, a prerequisite for applying section 2X1.1 to him is a conviction for aggravated assault. The commentary to the 1991 version of section 2X1.1 requires the use of the Guideline applicable to the substantive offense that the defendant was "convicted" of attempting, soliciting or conspiring to commit. Section 2X1.1, comment. (n. 2) (1991). We conclude, however, that, when read in context, this commentary applies only if section 2X1.1 is applied directly, rather than as a cross-reference from section 2K2.1. The cross-reference provision contains no language requiring that the defendant be convicted of the other offense. *See* U.S.S.G. § 2K2.1(c)(1)(A) (1991) ("If the defendant used or possessed any firearm ... in connection with the commission or attempted commission of another offense ... apply ... § 2X1.1 ... in respect to that other offense").

Accordingly, we affirm.

JOHN R. GIBSON, Circuit Judge, concurring separately.

I join in the court's opinion today but write separately to express my agreement with

---

2. The commentary to the amended version states in part: "'Substantive offense,' as used in this guideline, means the offense that the defendant was *convicted* of soliciting, attempting, or con- spiring to commit. Under § 2X1.1(a), the base offense level will be the same as that for the substantive offense." U.S.S.G. § 2X1.1, comment. (n. 2) (1991) (emphasis added).

Part II of Judge Bright's dissent. I agree that the sentencing guideline system cries out for change. The guidelines have not eliminated disparity, but have created a complex hypertechnical system consuming great amounts of judicial time for both trial and appellate judges. It is to be hoped that the legislative and executive branches will give careful review to the system. Perhaps a first step would be to make the guidelines simply that, guidelines.

BRIGHT, Senior Circuit Judge, dissenting.

## I.

I dissent and would reverse the district court because it erroneously sentenced Jollie Rocky Allen Smith, III under the 1990 Guidelines, the Guidelines in effect at the time of his crime, rather than the 1991 Guidelines, the Guidelines in effect at the time of his sentencing.[1]

In this case, Smith was convicted of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (1988), felon in possession of a firearm. The sentencing court determined he threatened, shot, and wounded a person as part of the crime and, through the cross-referencing provision of U.S.S.G. § 2K2.1(c)(2) (Nov. 1990), the court increased Smith's base offense level from 12 to 24, applying the level appropriate for aggravated assault. I would apply the 1991 Guidelines and would not use the cross-referencing provision because an amendment to the 1991 Guidelines makes the provision inapplicable to Smith's circumstances.[2]

In determining Smith's base offense level, we first turn to U.S.S.G. § 2K2.1 (Nov.1991), the provision relevant to a felon-in-possession. Subsection (c)(1)(A), the cross-referencing provision, states:

(1) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, ... apply—

(A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above ...

U.S.S.G. § 2K2.1(c)(1)(A) (Nov. 1991). Section 2X1.1(a)[3] states that the base offense level should be

[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

U.S.S.G. § 2X1.1(a) (Nov. 1991). The application notes to that section were amended in 1991 to read "'Substantive offense,' as used in this guideline, means the offense that the defendant was convicted of soliciting, attempting, or conspiring to commit." U.S.S.G. § 2X1.1, comment. n. 2 (Nov. 1991). As Smith was not convicted of aggravated assault, § 2X1.1(a) would not apply.

1. The court must apply the guidelines in effect at the time of sentencing unless ex post facto concerns require use of the guidelines in effect at the time of the commission of the crime. *United States v. Gullickson*, 981 F.2d 344, 346 (8th Cir. 1992); *see* 18 U.S.C. § 3553(a)(4) (1988). Smith was sentenced on June 16, 1992. According to the rationale of this dissent, Smith has an offense level of 18 under the 1991 Guidelines. Under the 1990 Guidelines, Smith has an adjusted offense level of 24. Thus, no ex post facto concerns require applying the Guidelines in effect at the time of the crime rather than the time of sentencing and the Guidelines in effect November 1, 1991 should be used.

2. The amendment to the application note applies only to cases sentenced after November 1, 1991. The only Eighth Circuit case involving a felon-in-possession with an underlying offense of aggravated assault applied an earlier version of the guidelines in which § 2K2.1(c)(1) referred the sentencing court directly to the substantive provision, rather than to § 2X1.1. *United States v. Shinners*, 892 F.2d 742, 743 (8th Cir.1989) (applying earlier version of provision instructing the court to "apply the guideline in respect to such other offense"). The cases cited in the majority opinion all apply the pre-amendment guidelines.

3. Although the appellee applies § 2X1.1(c), Brief for Appellee at 12, the plain language of § 2X1.1 makes it clear that subsection (a) should be applied, because attempted aggravated assault is not "expressly covered by another offense guideline section," as required by subsection (c). U.S.S.G. § 2X1.1(c) (Nov. 1991). Pre-amendment cases using § 2K2.1(c)(1) to reach § 2A2.2, the guideline on aggravated assault, do so through § 2X1.1(a). *See, e.g., United States v. Smith*, 953 F.2d 1060, 1067 (7th Cir.1992); *United States v. Willis*, 925 F.2d 359, 360 (10th Cir. 1991).

The majority opinion contends "when read in context, this commentary applies only if section 2X1.1 is applied directly, rather than as a cross-reference from section 2K2.1." *Supra,* at 397. This interpretive contortion reads a significant restriction into the Commission's clear statement in the application notes. Further, in 1991, the Commission amended § 2K2.1, omitting a background comment that stated

> The firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if he used the firearm to rob a gasoline station. In pre-guidelines practice, such prosecutions resulted in high sentences because of the true nature of the underlying conduct. The cross reference at § 2K2.1(c)(2) deals with such cases.

U.S.S.G. § 2K2.1, comment. (backg'd) (Nov. 1990). The omission of this comment in the 1991 Guidelines is consistent with the change in the application note to § 2X1.1 requiring a conviction for the substantive offense.

Consequently, the cross-referencing provision of § 2K2.1(c)(1)(A) in effect triggers a provision which is inapplicable unless the defendant has been convicted of committing the substantive offense. Smith was never convicted of aggravated assault, and thus cannot be sentenced under the guideline for aggravated assault. Accordingly, I would vacate Smith's sentence and remand for resentencing under § 2K2.1 of the 1991 Guidelines.

## II.

Now, if the reader is confused by the complexity of a correct application of the guidelines in this case, that confusion is understandable. The guideline system of sentencing has become exceedingly opaque. We judges do the best we can to interpret the increasingly bulky, almost incomprehensible code of the guidelines. Nevertheless, without an overhaul of the entire guideline system, it is nearly impossible to sentence offenders in a straightforward and equitable manner. One commentator characterized the federal guidelines as an "incredibly insane, complicated system." Cris Carmody, *Sentencing Overload Hits the Circuits,* Nat'l L.J., Apr. 5, 1993, at 32, (quoting Judy Clarke, Executive Director, Federal Defenders of Eastern Washington). Ms. Clarke's somewhat pejorative comments call attention to the frustrations of lawyers, judges and probation officers who must try to understand the complexities of the system.

The federal sentencing guidelines system cries out for change. *See* Marc Miller & Daniel J. Freed, *Suggestions for the President and the 103rd Congress on the Guideline Sentencing System,* 5 Fed.Sent.R. 187 (Jan./Feb. 1993). The authors comment:

> In this Forum Issue, twenty-five judges, fourteen lawyers and probation officers and five academics suggest steps to reform the federal guideline system. Most contributors seem to share a theme:
>
> *The federal guideline experiment is not working well. Substantial change is needed. Congress and the President should act wisely and soon.*